# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI

**RICHARD CLAY BOUCHILLON**

                                                **APPELLANT**

**VS.**

                                      **3:15-CV-00021-MPM**

**HOLLI R. CAFFEY**

                                                  **APPELLEE**

## ORDER

This is an appeal from an order of the bankruptcy court in which it stayed any ruling on the dischargeability of a debt arising from injuries sustained in an ATV accident, pending the completion of a state court civil trial relating to that accident. The parties have fully briefed the issues on appeal, and, having considered that briefing, the court concludes that the bankruptcy court's ruling should be affirmed.

The accident at issue in this case occurred on October 20, 2012, in Olive Branch, Mississippi. Appellee Holli R. Caffey was a passenger on an ATV being driven by appellant Richard Bouchillon, and she suffered a broken arm as a result of the accident. On September 3, 2013, Caffey filed a Complaint in the Circuit Court of DeSoto County, Mississippi, seeking recovery for her injuries, which she contends were caused by Bouchillon's negligence in driving the ATV. On October 25, 2013, Bouchillon filed a Chapter 7 bankruptcy petition in this district, thereby automatically staying the state court action. On November 11, 2013, Caffey filed an Adversary Proceeding against Bouchillon in the bankruptcy case, contending that the

1

unliquidated damages she sustained were nondischargeable pursuant to 11 U.S.C. §523(a)(9), based on Bouchillon's alleged intoxication at the time of the accident.[1]

Bouchillon responded to the adversary proceeding with a Motion to Dismiss that proceeding. The Bankruptcy Court denied Bouchillon's Motion to Dismiss, granted Caffey's Motion for Relief from Stay, and placed the adversary proceeding in abeyance pending the resolution of the state court proceedings. On June 25, 2014, Bouchillon appealed the bankruptcy court's order to this court.

In his appeal, Bouchillon cites the following two points of error:

ISSUE 1: Does 28 U.S.C. §157(b)(2)(B) preclude the Bankruptcy Court from determining dischargeability under 11 U.S.C. §523(a)(9) where there has not been a state court determination of liability where the underlying case is a personal injury claim.

ISSUE 2: Does 28 U.S.C. §157(b)(2)(O) preclude the Bankruptcy Court from determining dischargeablity under 11 U.S.C. §523(a)(9) where there has not been a state court determination of liability where the underlying case is a personal injury claim.

From reviewing the bankruptcy court's order, it appears to this court that Bouchillon somewhat mis-states the nature of the issues on appeal. By framing the issues as whether the relevant provisions of bankruptcy law outright "preclude" the bankruptcy court from determining dischargeability under 11 U.S.C. §523(a)(9), Bouchillon does not appear to fully recognize that the bankruptcy court's order was in the nature of a <u>discretionary</u> order relating to the *timing* of his ruling on the § 523(a)(9) adversary proceeding, rather than an irrevocable order of dismissal.

---

[1]Section 523(a)(9) provides that a discharge does not discharge an individual debtor from any debt "for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance."

In his reply brief, Bouchillon denies that an abuse of discretion applies in this context, writing that:

> The Appellee incorrectly states the standard of review that a district uses to review a bankruptcy court decision as abuse of discretion. A district court reviews conclusions of law de novo and factual findings for clear error. *In re James H. Moore, III*, 739 F. 3d 724, 727-28 (5th Cir. 2014)

While Bouchillon's argument is correct as far as it goes, it ignores the fact that many appellate issues involve neither conclusions of law nor factual findings, but rather require appellate courts to determine whether a trial court properly exercised its discretion to decide between two or more courses of action. It seems clear from the authorities discussed below that a bankruptcy court's decision regarding whether to allow a state court action to proceed is one such context. As noted above, Bouchillon cites the Fifth Circuit's decision in *In re James H. Moore, III*, for the proposition that an abuse of discretion standard does not apply in this context, but the Fifth Circuit itself applied an abuse of discretion standard to some of the bankruptcy court's rulings in that case, including its decision regarding whether to abstain from hearing the action under § 1334(c)(2). *Moore, III*, 739 F. 3d at 728. There is nothing in *Moore* suggesting that an abuse of discretion standard does not apply to the issue in this appeal, and there is abundant authority discussed below which strongly suggests that it does.

One such decision supporting an abuse of discretion standard is the one relied upon by the bankruptcy court in its order in this case, where it wrote that:

> [T]he case law submitted by the Plaintiff, *In re Pedro*, 2011 WL 3741504 (Bankr. E.D. Pa. Aug. 24, 2011), more accurately reflects the current state of the law regarding the Court's jurisdiction over personal injury claims. As highlighted by *Pedro*, pursuant to 28 U.S.C. §157(b)(2)(B), core proceedings – those proceedings over which the bankruptcy courts' possess jurisdiction - "include liquidation of contingent or unliquidated claims against the estate, except those that are based on personal injury claims." *Id*. at *18 (emphasis original). Additionally, 28 U.S.C. §157(b)(2)(O) specifically excludes from "core

3

> proceedings" matters involving personal injury tort claims. *Id*.
>
> This Court is bound by clear Congressional intent to deny bankruptcy courts the jurisdiction to hear such personal injury torts. This Court may only determine dischargeability of any debts arising from the tort, but not the underlying tort itself. The state court is the more appropriate forum for resolution of the underlying case. "Being heard by the state court before whom all pre-trial preparation has occurred, and in which the trial has been scheduled, stands as the only practical choice that preserves both judicial efficiency and comity between the state and federal courts." *Pedro*, 2011 WL 3741504 at *18.

The bankruptcy court thus relied upon *In re Pedro*, 2011 WL 3741504 (Bankr. E.D. Pa. Aug. 24, 2011) in making its ruling. In *Pedro*, the Pennsylvania bankruptcy court was very clear that it was exercising its discretionary authority to allow the state court action to proceed, noting "the long-recognized tenet that bankruptcy courts act within their discretion when they grant relief from the automatic stay to defer matters of state law to state court when significant time and funds have already been expended in the state court litigation." *Pedro*, 2011 WL 3741504 at *7, citing *In re Manno*, 2009 WL 236844, at *8 (Bankr. E.D. Pa. January 30, 2009).

Moreover, while the ruling of the bankruptcy court in this case was clearly informed by the policy considerations undergirding 28 U.S.C. §157, the court merely determined that the state court was the appropriate one to decide the underlying tort of negligence. The bankruptcy court made clear that it had jurisdiction to determine "dischargeability of any debts arising from the tort," and it merely stayed, but did not dismiss, the adversary petition to determine the debt non-dischargeable under § 523(a)(9). Thus, the ruling of the bankruptcy court in this case is properly regarded as a discretionary ruling regarding the *timing* of its ruling on the § 523(a)(9) motion, since nothing precludes it from addressing the merits of the motion once the underlying state court proceedings are concluded. This is the sort of case management decision which trial courts are routinely called upon to make, and an abuse of discretion standard clearly applies to this

ruling.

The *Manno* decision cited in *Pedro* noted a number of decisions from various circuits upholding a bankruptcy court's discretion in this regard, writing that:

> Based upon the above-quoted legislative history, courts have long recognized that it is within the sound discretion of the bankruptcy courts to grant relief from the automatic stay and thereby defer to a non-bankruptcy forum—which has jurisdiction over the dispute, and in which significant time and funds have already been expended—the resolution of pending litigation involving state law issues. *See, e.g., In re Robbins*, 964 F.2d 342, 345–46 (4th Cir. 1992); *Matter of Holtkamp,* 669 F.2d 505 (7th Cir. 1982); *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986); *In re Olmstead*, 608 F.2d 1365 (10th Cir.1979); *In re Hoffman*, 33 B.R. 937 (Bankr. W.D. Okla. 1983); *In re Philadelphia Athletic Club, Inc.*, 9 B.R. 280 (Bankr. E.D. Pa. 1981).

*Manno*, 2009 WL 236844, at *8.

In the *Robbins* decision cited in *Manno*, the Fourth Circuit, in concluding that the bankruptcy court did not abuse its discretion in allowing the state court action to proceed, wrote that:

> While Congress intended the automatic stay to have broad application, the legislative history to section 362 clearly indicates Congress' recognition that the stay should be lifted in appropriate circumstances. The Senate Report accompanying the Bankruptcy Reform Act of 1978 stated that:
>
>> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere. S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836; see also 2 Collier on Bankruptcy § 362.07[3], at 362-71. (15th ed. 1991) ("the liquidation of a claim may be more conveniently and speedily determined in another forum").

*Robbins*, 964 F.2d at 345.

In light of the foregoing authority, the court concludes that Bouchillon is mistaken when he denies that an abuse of discretion standard applies in this context. An integral part of any

5

appeal is providing arguments to the appellate court that the order appealed from was erroneous based upon the applicable standard of review. In this case, Bouchillon elected not to respond to Caffey's arguments that the bankruptcy court did not abuse its discretion in this case, instead arguing that this standard of review is inapplicable. The court concludes that the bankruptcy court's ruling would be due to be affirmed on this basis alone.

Nevertheless, this court will, out of an abundance of caution, conduct its own independent analysis of whether the bankruptcy court abused its discretion in allowing the state court action to proceed, even in the absence of arguments from Bouchillon on this issue. In concluding that no such abuse of discretion occurred, the court initially notes that the state court action was filed prior to the bankruptcy action in this case, and the state court therefore first obtained jurisdiction over the controversies arising from the accident in this case.

That aside, the court finds it highly significant that the issue of whether Bouchillon was "intoxicated" in this case appears to be an unusually difficult and fact intensive one which would more appropriately be resolved by a state court which is better equipped to decide difficult issues of state law. As noted previously, blood tests taken four hours after the accident revealed that Bouchillon had a blood alcohol level of .05%, with Mississippi state law defining intoxication as being present at levels of .08% or greater. In the court's view, the bankruptcy court's ruling might have been more questionable if Bouchillon's blood tests had shown blood alcohol levels which were clearly in excess of the legal limit. In such a case, the factual issue of whether Bouchillon was intoxicated under Mississippi law would have been a far easier one, and there would have seemingly been less justification for deferring ruling on the issue of whether the § 523(a)(9) exception to discharge applies in this case. As it stands, however, the tests showing blood alcohol levels of .05% four hours after the accident makes this issue a seemingly close and

difficult one.

It is important to note, however, that Caffey does not base her contention that Bouchillon was intoxicated at the time of the accident solely upon his alleged consumption of alcohol. To the contrary, Caffey argues in her brief that:

> Witnesses, Candice Rhea, Kristen Martin, and Michael Dykes, all observed Appellant drinking alcohol prior to the subject wreck. The investigating officer, Officer Sylvester, with the Olive Branch Police Department "smelled an [*sic*] strong odor of intoxicating beverage coming from Mr. Bouchillon" when he arrived at the scene. See Exhibit 1, Incident Report. At least four hours later, blood was drawn from Appellant at the hospital for testing. See Exhibit 2, Incident Supplement Report. The results showed a blood alcohol concentration level of .05% as well as the presence of morphine, hydrocodone, midazolam, and marijuana. See Exhibit 3, Mississippi Crime Laboratory Report.

[Appelee's brief at 4]. Thus, there are multiple potential forms of intoxication at issue in this case. Indeed, Miss. Code Ann. § 63-11-30(1) makes it unlawful to, *inter alia*, operate a vehicle under the influence "of any other substance which has impaired such person's ability to operate" that vehicle and to operate such a vehicle "under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law." This statutory language has a clear potential to give rise to issues of Mississippi law which are better resolved by Mississippi state courts.

Bouchillon's briefing before this court makes it clear that he disputes the factual and legal bases of virtually all of Caffey's theories regarding how he might have been intoxicated. That is, Bouchillon argues in his reply brief that:

> Nowhere in the police report does it state that anyone saw the Appellant drinking any sort of alcohol. The smell of alcohol in a group of people is a poor indicator as it is impossible to tell from odor outdoors of an intoxicating beverage what quantity of alcohol is present in or perhaps on an individual. The BAC clearly seems to collaborate that the Appellant did not have an unlawful amount of alcohol in his system.

7

> The Appellee's Brief mentions the results of opiates and marijuana in the Appellant's system. The blood was obtained after the Appellant had begun treatment at the hospital and had been administered medication. There is also a high rate of probability of false positives for THC occurring due to the use of medications. None of this has been investigated and would be subject to consideration to determine if the operation of the ATV was unlawful. Additionally, there is no level of THC for intoxication in the Mississippi statute.

[Appellant's reply brief at 5].

Based solely upon these two short paragraphs of Bouchillon's brief, this court can discern multiple issues which would better be resolved by a Mississippi trial court and/or jury than a federal bankruptcy court, including 1) evaluating the nature and credibility of eyewitness testimony regarding whether Bouchillon was drinking before the accident; 2) evaluating the significance of the odor of alcohol in an outdoors environment; 3) confirming whether or not blood alcohol levels of .05% four hours after the accident are consistent with intoxication at the time of the accident; 4) determining whether the opiates detected in Bouchillon's blood merely reflect medication which he was given at the hospital; 5) determining whether the tests showing the presence of THC (i.e. marijuana) in Bouchillon's blood was merely a "false positive" based on the use of medication; 6) determining the legal significance of the lack of statutory guidance regarding levels of THC intoxication; and 7) determining to what extent and how "investigation" of these issues through discovery and/or expert testimony should be performed.

In the court's view, Bouchillon's own description of the numerous disputed issues relevant to the issue of intoxication supports a conclusion that the bankruptcy court did not even err, much less abuse its discretion, in deciding to allow the state court action to proceed. Resolving factual issues based on Mississippi law is a role which Mississippi trial courts and/or juries are uniquely suited to perform. The bankruptcy court, by contrast, has expertise in the area of federal bankruptcy law, and federal courts in general lack the authority to do more than make

8

*Erie*-guesses regarding unclear issues of state law. Appellant notes that Caffey's complaint did not allege that Bouchillon was intoxicated at the time of the accident, but, based on her bankruptcy filings, she clearly now alleges this to be the case and will be able to raise this issue in the state court proceedings. Mississippi Rule of Civil Procedure 15 provides for liberal amendment of pleadings, and this court presumes that either party could request that the trial court submit an interrogatory to the jury regarding whether Bouchillon was intoxicated at the time of the accident.

The court therefore sees no impediment to the issue of intoxication being fully litigated in state court, and it further finds no error in the bankruptcy court's decision to allow that litigation to run its course prior to considering whether § 523(a)(9)'s exception to discharge applies in this case. As noted in *Robbins*, the Senate Report on the 1978 Bankruptcy Act acknowledged that "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *Robbins*, 964 F.2d at 345. The bankruptcy courts in this district have no shortage of bankruptcy matters to resolve, and, once again, their expertise lies in that area. The court therefore finds no error, much less an abuse of discretion, in the bankruptcy court's decision to allow the Mississippi state court which first gained jurisdiction over this action to resolve it prior to consideration of any § 523(a)(9) issues which may remain. The bankruptcy court's ruling will therefore be affirmed.

It is therefore ordered that the bankruptcy court's order in this case is affirmed, and this appeal is now closed.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 16th day of September, 2015.

                              **/s/ MICHAEL P. MILLS**
                              **UNITED STATES DISTRICT JUDGE**
                              **NORTHERN DISTRICT OF MISSISSIPPI**
                                  I